Paul Rolf Jensen CSB #154013
**JENSEN & ASSOCIATES**
   *Trial Lawyers*
650 Town Center Drive, 12ᵗʰ Floor
Costa Mesa, CA 92626
(714) 662-5527

Attorneys for Plaintiff LUIS SANDOVAL
and THE PROPOSED CLASS

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

| | |
|---|---|
| LUIS SANDOVAL, on behalf of himself and all others similarly situated,<br><br>              Plaintiff,<br><br>   v.<br><br>HERITAGE PHARMACEUTICALS, INC., a Delaware corporation; HERITAGE PHARMACEUTICALS, INC. d/b/a AVET PHARMACEUTICALS, INC.; and DOES 1 to 50, inclusive,<br><br>              Defendants. | Case No.: 2:20-cv-05787 DMG (PLAx)<br><br>FIRST AMENDED CLASS ACTION COMPLAINT FOR:<br><br>1. **BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY**<br>2. **UNJUST ENRICHMENT**<br>3. **FRAUDULENT CONCEALMENT**<br>4. **FRAUD**<br>5. **CONVERSION**<br>6. **VIOLATION OF CALIFORNIA CONSUMER LEGAL REMEDIES ACT [Cal. Civ. Code §1750, *et seq.*]**<br>7. **VIOLATION OF CALIFORNIA UNFAIR COMPETITION LAW [Cal. Bus. & Prof. Code §17200, *et seq.*]**<br><br>DEMAND FOR JURY TRIAL |

Plaintiff Luis Sandoval ("Plaintiff") brings this action on behalf of himself and all others similarly situated against Defendant Heritage Pharamaceuticals, Inc. d/b/a Avet Pharmaceuticals Inc. ("Avet" or "Defendant"). Plaintiff makes the following allegations pursuant to the investigation of his counsel and based upon information and belief, except as to allegations specifically pertaining to himself, which are based on personal knowledge.

**FIRST AMENDED CLASS ACTION COMPLAINT**
– Page 1--

**JURISDICTION**

1.  This Court has subject matter jurisdiction pursuant to 28 U.S.C. §1332(d)(2)(A), as
    modified by the Class Action Fairness Act of 2005, because:

    a.  The Proposed Class includes over 100 members, and the named plaintiff and class
        members are citizens states that are diverse from the state of Defendants'
        citizenship, the amount in controversy in this class action exceeds five million
        dollars ($5,000,000), exclusive of interest and costs; and

    b.  Defendants have purposefully availed themselves of the privilege of conducting
        business activities within the State of California by regularly conducting business
        within this judicial district at all time relevant hereto.

**VENUE**

2.  Venue is proper in this judicial district pursuant to 28 U.S.C. §1391, because a substantial
    part of the acts or omissions complained of herein occurred in this judicial district, and
    Defendants caused harm to the named Plaintiff and numerous class members in this
    judicial district.

**PARTIES**

3.  Plaintiff Luis Sandoval is a citizen of California who resides in the City of Bellflower, in
    the County of Los Angeles. Mr. Sandoval has been taking metformin since at least 2010.
    At all times relevant herein, Mr. Sandoval was prescribed, purchased, and consumed
    metformin manufactured by Defendant, for which he paid a co-pay of $35.00. Upon
    learning of the metformin defect, Mr. Sandoval discovered that he had been taking the

defective metformin manufactured by Avet. When purchasing metformin from Defendant, Mr. Sandoval reviewed the accompanying labels and disclosures, and reasonably understood them to be representations and warranties by the manufacturer, distributor, and pharmacy that the medication was properly manufactured, free from defects, and safe for its intended use. Mr. Sandoval relied on these representations and warranties in deciding to purchase Defendant's metformin, and these representations and warranties were part of the basis of the bargain, in that he would not have purchased metformin from Defendant if he had known it was not, in fact, properly manufactured and free from defects. Mr. Sandoval further understood that each purchase involved a direct transaction between himself and Avet because his medication came with packaging and other materials prepared by Avet, including representations and warranties that his medication was properly manufactured and free from defects.

4.  Defendant Heritage Pharmaceuticals, Inc. d/b/a Avet Pharmaceuticals Inc. is a Delaware corporation with a principal place of business at One Tower Center Boulevard, East Brunswick, New Jersey 08816. Avet conducts substantial business throughout the United States, and specifically in the State of California. Avet has been engaged in the manufacturing, distribution, and sale of defective metformin in the United States, including in the State of California.

## COMMON ALLEGATIONS

5.  This is a class action lawsuit regarding Defendant's manufacturing, distribution, and sale of the generic medication metformin that contains dangerously high levels of N-nitrosodimethylamine ("NDMA"), a carcinogenic and liver-damaging impurity.

---

**FIRST AMENDED CLASS ACTION COMPLAINT**
– Page 3--

6. Metformin is a prescription medication that has been sold under brand names such as Glucophage. Metformin is primarily used to control high blood sugar in patients with Type 2 diabetes. However, Avet's manufacturing process has caused their metformin to contain dangerously high levels of NDMA.

7. NDMA is a semivolatile organic chemical. According to the United States Environmental Protection Agency ("EPA"), NDMA "is a member of the N-ni-trosamines, a family of potent carcinogens." While NDMA is not currently produced in the United States other than for research purposes, it was formerly used "in production of liquid rocket fuel," among other uses. NDMA is listed a "priority toxic pollutant" in federal regulations. 40 C.F.R. §131.36. Exposure to NDMA can cause liver damage and cancer in humans. NDMA is classified as a probable human carcinogen and animal studies have shown that "exposure to NDMA has caused tumors primarily of the liver, respiratory tract, kidney and blood vessels."

8. On March 2, 202, Valisure, an online pharmacy registered with the United States Drug Enforcement Agency ("USDEA") and Food & Drug Administration ("FDA"), "detected high levels of N-Nitrodimethylamine ('NDMA') in specific batches of prescription drug products containing metformin."[1] This included metformin manufactured by Avet.[2]

9. Avet had not yet issued a recall of its defective metformin and continues to represent on its website that it manufactures "high quality generic medicines." However, these representations are false, as Defendant's metformin medication contains the carcinogenic impurity NDMA.

## I. METFORMIN IS MARKETED AS SAFE

---

[1] VALISURE, VALISURE CITIZEN PETITION ON METFORMIN (2020), (Exhibit 1).
[2] *Id.* at 10.

10. Avet has always marketed metformin as a safe and effective product and has continued to do so despite the findings of Valisure

11. Metformin is one of the most prescribed and successful drugs in history. In 2017, over 78.6 million prescriptions written for the drug in the United States alone.[3]

12. On Avet's website, the company states that it manufactures "high quality generic medicines."

## II. DEFENDANT'S METFORMIN CONTAINS DANGEROUS LEVELS OF NDMA

13. Contrary to the above assertions, Avet's metformin contains dangerously high levels of NDMA that would not be present if the medication were properly and safely manufactured. As noted above, Valisure has found unacceptable levels of NDMA in samples of metformin manufactured by Avet.

14. While the cause of the NDMA contamination in metformin is still being investigated, Valisure notes that "the presence of NDMA in metformin products may be primarily due to contamination during manufacturing as opposed to a fundamental instability of the drug molecule."[4]

15. The FDA has "set strict daily acceptable intake limits on NDMA in pharmaceuticals of 96 nanograms."[5] But Valisure found that Avet's metformin has an NDMA content that is between 5.3 to nearly 9 times the daily intake limit.[6]

16. The presence of NDMA in metformin is particularly troubling because, by its very nature, it is intended to be taken daily.

---

[3] *Number of metformin hydrochloride prescriptions in the U.S. from 2004 5o 2017*, STATISTA, https://www.statista.com/statistics/780332/metformin-hydrochloride-prescriptions-number-in-the-us/ (last accessed June 17, 2020).
[4] VALISURE PETITION at 3.
[5] *Id.* at 1.
[6] *Id.* at 10.

17. Pursuant to its findings, Valisure recommended that Avet recall its metformin medications.

## III. PLAINTIFF WAS HARMED BY PURCHASING AND CONSUMING DEFENDANT'S DEFECTIVE METFORMIN

18. Plaintiff and the Proposed Class were injured by paying the full purchase price of their metformin medications. These medications are worthless, as they contain harmful levels of NDMA. As the medications expose users to NDMA levels well above the legal limit, the medications are not fit for human consumption. Plaintiff is further entitled to statutory damages, damages for the injury sustained in consuming high levels of acutely-toxic NDMA, and for damages related to Defendant's conduct.

19. Plaintiff brings this action on behalf of himself and the Proposed Class for equitable relief and to recover damages and restitution for: (i) breach of the implied warranty of merchantability; (ii) unjust enrichment; (iii) fraudulent concealment; (iv) fraud; (v) conversion; and (vi) violation of California's Unfair Competition Law, Business and Professions Code §17200, *et seq*.

## CLASS ALLEGATIONS

20. Plaintiff seeks to represent a class defined as all persons in the California who purchased metformin manufactured by Avet (the "Proposed Class"). Specifically excluded from the Class are persons who made such purchase for the purpose of resale, Defendant, Defendant's officers, directors, agents, trustees, parents, children, corporations, trusts, representatives, employees, principals, servants, partners, joint ventures, or entities controlled by Defendant, and their heirs, successors, assigns, or other persons or entities

related to or affiliated with Defendant and/or Defendant's officers and/or directors, the judge assigned to this action, and any member of the judge's immediate family.

21. Subject to additional information obtained through further investigation and discovery, the foregoing definition of the Proposed Class may be expanded or narrowed by amendment or amended complaint.

22. **Numerosity**. The members of the Proposed Class are geographically dispersed throughout the State of California and are so numerous that individual joinder is impracticable. Upon information and belief, Plaintiff reasonably estimates that there are hundreds of thousands of members in the Proposed Class. Although the precise number of Proposed Class members is unknown to Plaintiff, the true number of Proposed Class members is known to Defendant and may determined through discovery. Proposed Class members may be notified of the pendency of this action by mail and/or publication through the distribution records of Defendant and third-party retailers and vendors.

23. **Common Questions of Law and Fact Predominate.** Common questions of law and fact exist as to all members of the Proposed Class and predominate over any questions affecting only individual Proposed Class members. These common legal and factual questions include, but are not limited to, the following:

a. Whether the metformin manufactured by Defendant contains dangerously high levels of NDMA, thereby breaching the implied warranties made by Defendant and making the metformin unfit for human consumption and therefore unfit for its intended purpose.

     b.   Whether Defendant know or should have known that metformin contained elevated levels of NDMA prior to selling the medication, thereby constituting fraud and/or fraudulent concealment;

     c.   Whether Defendant has unlawfully converted money from Plaintiff and the Proposed Class;

     d.   Whether Defendant is liable to Plaintiff and the Proposed Class for unjust enrichment;

     e.   Whether Defendant is liable to Plaintiff and the Proposed Class for fraudulent concealment;

     f.   Whether Plaintiff and the Proposed Class have sustained monetary loss and the proper measure of that loss;

     g.   Whether Plaintiff and the Proposed Class are entitled to declaratory and injunctive relief;

     h.   Whether Plaintiff and the Proposed Class are entitled to restitution and disgorgement from Defendant; and

     i.   Whether the marketing, advertising, packaging, labeling, and other promotional materials for metformin are deceptive.

24. **Typicality.** Plaintiff's claims are typical of the claims of the other members of the Proposed Class in that Defendant mass marketed and sold defective metformin to consumers throughout California. All of the metformin manufactured by Defendant contained this defect. Therefore, Defendant breached its implied warranties to Plaintiff and the Proposed Class by manufacturing, distributing, and selling the defective metformin. Plaintiff's claims are typical in that he was uniformly harmed in purchasing

and consuming the defective metformin. Plaintiff's claims are further typical in that Defendant deceived Plaintiff in the very same manner as they deceived each member of the Proposed Class. Further, there are no defenses available to Defendant that are unique to Plaintiff.

25. **Adequacy of Representation.** Plaintiff will fairly and adequately protect the interests of the Proposed Class. Plaintiff has retained counsel that is highly experienced in complex Plaintiff-side litigation, and Plaintiff intends to vigorously prosecute this action on behalf of the Proposed Class. Furthermore, Plaintiff has no interest that are antagonistic to those members of the Proposed Class.

26. **Superiority.** A class action is superior to all other available means for the fair and efficient adjudication of this controversy. The damages or other financial detriment suffered by individual Proposed Class members are relatively small compared to the burden and expense of individual litigation of their claims against Defendant. It would thus be virtually impossible for the Proposed Class, on an individual basis, to obtain effective redress for the wrongs committed against them. Moreover, even if Proposed Class members could afford such individualized litigation, the court system could not. Individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts. Individualized litigation would also increase the delay and expense to all parties and the court system from the issues raised by this action. By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding, economies of scale, and comprehensive supervision by a single court, and presents no unusual management difficulties under the circumstances.

27. In the alternative, the Proposed Class may also be certified because:

---

**FIRST AMENDED CLASS ACTION COMPLAINT**
– Page 9--

a.  The prosecution of separate actions by individual Proposed Class members would create a risk of inconsistent or varying adjudications with respect to individual Proposed Class members that would establish incompatible standards of conduct for the Defendant;

b.  The prosecution of separate actions by individual Proposed Class members would create a risk of adjudications with respect to them that would, as a practical matter, be dispositive of the interest of other Proposed Class members not parties to the adjudications, or substantially impair or impede their ability to protect their interests; and/or

c.  Defendant has acted or refused to act on the grounds generally applicable to the Proposed Class as a whole, thereby making appropriate final declaratory and/or injunctive relief with respect to the members of the Proposed Class as a whole.

### FIRST CAUSE OF ACTION
BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY
(On Behalf of The Proposed Class, Against All Defendants and Each of Them)

28. Plaintiff repeats and reincorporates all of the allegations and averments set forth in paragraphs 1 through 27, *supra*, as if set forth in full at this point.

29. Plaintiff brings this claim individually on behalf of himself and on behalf of the members of the Proposed Class against Defendant.

30. Defendant, as the designer, manufacturer, marketer, distributor, and/or seller, impliedly warranted that metformin (i) would not contain elevated levels of NDMA and (ii) is generally recognized as safe for human consumption.

**FIRST AMENDED CLASS ACTION COMPLAINT**
– Page 10--

31. Defendant breached the warranty implied in the contract for the sale of the defective metformin because it could not pass without objection in the trade under the contract description, the metformin was not of fair or average quality within the description, and the metformin was unfit for its intended and ordinary purpose because it was defective in that it contained elevated levels of carcinogenic and liver toxic NDMA, and as such is not generally recognized as safe for human consumption. As a result, Plaintiff and the Proposed Class members did not receive the goods as impliedly warranted by Defendant to be merchantable.

32. Plaintiff and the Proposed Class members purchased metformin in reliance upon Defendant's skill and judgment and the implied warranties of fitness for a particular purpose.

33. The metformin was not altered by Plaintiff or the Proposed Class members.

34. The metformin was defective when it left the exclusive control of Defendants.

35. Defendant knew that the metformin would be purchased and used without additional testing by Plaintiff and the Proposed Class members.

36. The defective metformin was defectively manufactured and is unfit for its intended purpose, and Plaintiff and the Proposed Class members did not receive the goods as warranted.

37. As a direct and proximate result of Defendant's breach of the implied warranty of merchantability, Plaintiff and the Proposed Class members have been injured and harmed in the following ways: (a) they would not have purchased Defendant's metformin on the same terms if they knew that said metformin contained harmful levels of NDMA, and is

not generally recognized as safe for human consumption; and (b) Defendant's metformin

does not have the characteristics, ingredients, uses, or benefits as promised by Defendant.

## SECOND CAUSE OF ACTION
UNJUST ENRICHMENT
(On Behalf of The Proposed Class, Against All Defendants and Each of Them)

38. Plaintiff repeats and reincorporates all of the allegations and averments set forth in

paragraphs 1 through 27, *supra*, as if set forth in full at this point.

39. Plaintiff brings this claim individually and on behalf of the members of the Proposed

Class against Defendant.

40. Plaintiff and the Proposed Class conferred a benefit on Defendant in the form of monies

paid to purchase Defendant's defective metformin.

41. Defendant voluntarily accepted and retained this benefit.

42. Because the benefit was obtained unlawfully by way of selling and accepting

compensation for medications unfit for human use, it would be unjust and inequitable for

Defendant to retain it without paying the value thereof.

## THIRD CAUSE OF ACTION
FRAUDULENT CONCEALMENT
(On Behalf of The Proposed Class, Against All Defendants and Each of Them)

43. Plaintiff repeats and reincorporates all of the allegations and averments set forth in

paragraphs 1 through 27, *supra*, as if set forth in full at this point.

44. Plaintiff brings this claim individually and on behalf of the members of the Proposed

Class against Defendant.

45. Defendant owed a duty to Plaintiff and the Proposed Class to disclose material facts

given their relationship as contracting parties and intended users of metformin. Defendant

---

**FIRST AMENDED CLASS ACTION COMPLAINT**
– Page 12--

had a further duty to disclose material facts to Plaintiff and the Proposed Class that they were in fact manufacturing, distributing, and selling harmful metformin unfit for human consumption because Defendant had superior knowledge such that engaging in a transaction for purchase and sale of the defective metformin with Plaintiff and the Proposed Class without disclosure was inherently unfair.

46. Defendant had knowledge of these material facts. Beginning in December 2019, Defendant was aware that NDMA was detected in metformin-containing medications in other countries.[7] During this time, Plaintiff and the Proposed Class members were using their medications without knowing they contained dangerous levels of NDMA.

47. Defendant breached their duty to disclose these material facts.

48. In failing to disclose these material facts to Plaintiff and the Proposed Class, Defendant intended to hide form Plaintiff and the Proposed Class that they were purchasing and consuming metformin containing a harmful defect that was unfit for human use, and thus acted with scienter and/or the intent to defraud.

49. Plaintiff and the Proposed Class reasonably relied on Defendant's failure to disclose insofar as they would not have purchased the defective metformin manufactured and sold by Defendant had they known in contained unsafe levels of NDMA.

50. As a direct and proximate result of Defendant's breach, Plaintiff and the Proposed Class suffered damages in the amount of monies paid for the defective metformin.

51. Defendant's conduct was and is malicious, oppressive, and fraudulent, and in conscious disregard of Plaintiff's and the Proposed Class' rights. Defendant acted with a malicious state of mind arising from avarice and greed, and a willingness to vex, annoy and injure

---

[7] *Statement from Janet Woodcock, M.D., director of FDA's Center for Drug Evaluation and Research, on impurities found in diabetes drugs outside the U.S.*, https://www.fda.gov/news-events/press-announcements/statement-janet-woodcock-md-director-fdas-center-drug-evaluation-and-research-impurities-found (last accessed June 17, 2020).

---

**FIRST AMENDED CLASS ACTION COMPLAINT**
– Page 13--

Plaintiff and the Proposed Class in order to fraudulently induce them into purchasing the

defective metformin. This conduct is sufficiently oppressive, fraudulent, and despicable

behavior so as to entitle Plaintiff and the Proposed Class to punitive and exemplary

damages to set an example and to punish Defendant.

## FOURTH CAUSE OF ACTION
FRAUD
(On Behalf of The Proposed Class, Against All Defendants and Each of Them)

52. Plaintiff repeats and reincorporates all of the allegations and averments set forth in

paragraphs 1 through 27, *supra*, as if set forth in full at this point.

53. Plaintiff brings this claim individually and on behalf of the members of the Proposed

Class against Defendant.

54. As set forth herein, Defendant provided Plaintiff and the Proposed Class members with

materially false or misleading information about the metformin Defendant manufactured.

Specifically, Defendant marketed metformin as safe for human consumption. As

indicated above, however, these representations were and are false and misleading, as

Defendant's metformin medications contain elevated levels of NDMA.

55. The misrepresentations and omissions of material fact made by Defendant, upon which

Plaintiff and the Proposed Class members reasonably and justifiably relied, were intended

to induce and actually induced Plaintiff and the Proposed Class members to purchase

defective metformin.

56. Defendant knew or should have known that its metformin was contaminated with this

harmful defect, but nonetheless continued to manufacture and sell it. Beginning in

December 2019, Defendant was aware that NDMA was detected in metformin-containing

---

**FIRST AMENDED CLASS ACTION COMPLAINT**

medications in other countries. During this time, Plaintiff and the Proposed Class members were using their medications without knowing they contained dangerous levels of NDMA.

57. The fraudulent actions of Defendant caused damage to Plaintiff and the Proposed Class members, who are entitled to damages and other legal and equitable relief as a result.

58. Defendant's conduct was and is malicious, oppressive, and fraudulent, and in conscious disregard of Plaintiff's and the Proposed Class' rights. Defendant acted with a malicious state of mind arising from avarice and greed, and a willingness to vex, annoy and injure Plaintiff and the Proposed Class in order to fraudulently induce them into purchasing the defective metformin. This conduct is sufficiently oppressive, fraudulent, and despicable behavior so as to entitle Plaintiff and the Proposed Class to punitive and exemplary damages to set an example and to punish Defendant.

## FIFTH CAUSE OF ACTION
CONVERSION
(On Behalf of The Proposed Class, Against All Defendants and Each of Them)

59. Plaintiff repeats and reincorporates all of the allegations and averments set forth in paragraphs 1 through 27, *supra*, as if set forth in full at this point.

60. Plaintiff brings this claim individually and on behalf of the members of the Proposed Class against Defendant.

61. Plaintiff and the Proposed Class have an ownership right to the monies paid for the defective metformin manufactured by Defendant.

62. Defendant has wrongfully asserted dominion over the payments illegally obtained by them in exchange for the defective metformin. Defendant has done so every time that Plaintiff and the Proposed Class purchased their metformin.

63. As a direct and proximate result of Defendant's wrongful assertion of dominion over the sums of money paid by Plaintiff and the Proposed Class for Defendant's metformin, Plaintiff and the Proposed Class have suffered damages in the total amount of payments made each time they bought Defendant's metformin.

## SIXTH CAUSE OF ACTION
VIOLATION OF CALIFORNIA CONSUMER LEGAL REMEDIES ACT [CAL. CIV. CODE §1750, *et seq.*]
(On Behalf of The Proposed Class, Against all Defendants and Each of Them)

64. Plaintiff repeats and reincorporates all of the allegations and averments set forth in paragraphs 1 through 27, *supra*, as if set forth in full at this point.

65. Plaintiff brings this claim individually and on behalf of the members of the Proposed Class against Defendant.

66. California's Consumer Legal Remedies Act ("CLRA") CAL. CIV. CODE §1750, *et seq.*, prohibits "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer." CAL. CIV. CODE §1750(a).

67. Plaintiff and the Proposed Class members are "consumers" within the meaning of California Civil Code §1750(d) because they bought metformin for personal, family or household purposes.

68. Defendant is a "person" within the meaning of California Civil Code §§1761(c) and 1770 and provided "goods" within the meanings of California Civil Code §§1761(a) and 1770.

---

**FIRST AMENDED CLASS ACTION COMPLAINT**
– Page 16--

69  Plaintiff, the members of the Proposed Class, and Defendant have engaged in
    "transactions," as that term is defined by California Civil Code §1761(e).

70  Defendant's acts and practices, as alleged herein, violate the CLRA because they include
    unfair and deceptive acts and practices in connection with transactions (the sale of
    defective metformin).

71  As alleged in greater detail above, Defendant has violated the CLRA by falsely
    representing to Plaintiff and members of the Proposed Class that metformin (i) would not
    contain elevated levels of NDMA and (2) is generally recognized as safe for human
    consumption. In fact, Defendant's metformin contained elevated levels of NDMA and
    was not safe for human consumption.

72  These misrepresentations constitute "unfair or deceptive acts or practices" prohibited by
    the CLRA, CAL. CIV. CODE §§1750(a)(5); 1770(a)(7); 1770(a)(9); 1770(a)(16).

73  Further, Defendant concealed from and failed to disclose to Plaintiff and the Proposed
    Class that its metformin did not confirm to the product's labels, packaging, advertising,
    and statements in that it contained elevated levels of NDMA and was not safe for human
    consumption.

74  Defendant had a duty to disclose Plaintiff and members of the Proposed Class the true
    quality, characteristics, ingredients, nutrient levels, and suitability of the metformin
    because Defendant was in a superior position to know the true nature of their products
    and Defendant knew that Plaintiff and members of the Proposed Class could not
    reasonably have been expected to learn or discover that the metformin was
    misrepresented in the packaging, labels, advertising, and websites prior to purchasing the
    metformin.

75  Plaintiff and the Proposed Class members' reliance on these omissions was reasonable given Defendant's advertising, representations, warranties, and general promotions of the Metformin.

76  Plaintiff and members of the Class did not know that Defendant was concealing or otherwise omitting material facts.

77  As a direct and proximate result of Defendant's unfair and deceptive acts and practices, Plaintiff and the Proposed Class are entitled to injunctive relief ensuring Defendant issues a recall of its metformin medications and complies with all proper quality and safety standards going forward.

78  On or about June 12, 2020, prior to the filing of this action, a CLRA notice letter was sent to Defendant that complies in all respects with California Civil Code §1782(a). Plaintiff's counsel sent Defendant the letter via certified mail, return receipt requested, advising Defendant of its violation of the CLRA and demanding that it cease and desist from such violations. Attached hereto as Exhibit 1 is a true and correct copy of said letter.

**SEVENTH CAUSE OF ACTION**
VIOLATION OF CALIFORNIA UNFAIR COMPETITION LAW [CAL. BUS. & PROF. CODE §17200, *et seq.*]
(On Behalf of The Proposed Class, Against all Defendants and Each of Them)

79  Plaintiff repeats and reincorporates all of the allegations and averments set forth in paragraphs 1 through 27, *supra*, as if set forth in full at this point.

80  Plaintiff brings this claim individually and on behalf of the members of the Proposed Class against Defendant.

81  By committing the acts and practices alleged herein, Defendant violated California's Unfair Competition Law ("UCL"), CAL. BUS. & PROF. CODE §17200, *et seq.* as to the Proposed Subclass, by engaging in unlawful, fraudulent, and unfair conduct.

82  Defendant violated the UCL's proscription against engaging in unlawful conduct as a result of its violations of the CLRA, California Civil Code §§1770(a)(5), (a)(7), (a)(9), and (a)(16).

83  Defendant's acts and practices described herein violate the UCL's prescription against engaging in fraudulent conduct.

84  As discussed in greater detail above, specifically, Defendant marketed metformin as safe for human consumption. However, these representations were and are false and misleading as Defendant's metformin medications contained elevated levels of NDMA. These representations were likely to deceive reasonable consumers.

85  Defendant's acts and practices described above also violate the UCL's proscription against engaging in unfair conduct.

86  Plaintiff and members of the Proposed Class suffered a substantial injury by virtue of buying metformin that  they would not have purchased absent Defendant's unlawful, fraudulent, and unfair marketing, advertising, packaging, and omission about the contaminated nature of its metformin medication, or by virtue of paying an excessive premium price for the unlawfully, fraudulently, and unfairly marketed, advertised, packaged, and labeled metformin medication.

87  There is no benefit to consumers or competition from deceptively marketing and omitting material facts concerning the contaminated nature of Defendant's metformin medication.

88  Plaintiff and members of the Proposed Class had no reasonable way of knowing that

Defendant's metformin medication they purchased was not as marketed, advertised,

packaged, or labeled. Plaintiff and members of the Proposed Class are not able to test for

the presence of NDMA in their metformin medications. Thus, Plaintiff and members of

the Proposed Class could not have reasonably avoided the injury each of them suffered.

89  The gravity of the consequences of Defendant's conduct as described herein outweighs

any justification, motive, or reason therefore, particularly considering the available legal

alternatives which exist in the marketplace. Such conduct by Defendant was and is

immoral, unethical, unscrupulous, offends established public policy, and is substantially

injurious to Plaintiff and members of the Proposed Class.

90  Defendant's violation has continuing and adverse effects because Defendant's unlawful

conduct is continuing, with no indication that Defendant intends to cease this fraudulent

course of conduct. The public and class members are subject to ongoing harm because

Defendant has not issued a recall for its contaminated metformin medication.

91  Plaintiff and the Proposed Class lost money and/or property as a result of Defendant's

violations of California's UCL because: (i) they would not have purchased Defendant's

metformin on the same terms if they knew that the metformin contained harmful levels of

NDMA, and is not generally recognized as safe for human consumption; and (b)

metformin does not have the characteristics, ingredients, uses, or benefits as promised by

Defendant.

92  Pursuant to California Business & Professions Code §17203, Plaintiff and the Proposed

Class seek an order of this Court that includes, but is not limited to, requiring Defendant

to: (i) provide restitution to Plaintiff and the members of the Proposed Class; (ii) disgorge

---

**FIRST AMENDED CLASS ACTION COMPLAINT**
– Page 20--

all revenues obtained as a result of violations of the UCL; and (iii) pay Plaintiff and the

Proposed Class' attorney's fees and costs.

## **PRAYER**

WHEREFORE, Plaintiff prays that the Court enter judgment and orders in their favor and

against all Defendants, and Each of Them, as follows:

1. An Order certifying the Class and appointing Plaintiff as the representative of the
   Proposed Class, and appointment Plaintiff's counsel as lead counsel for the Proposed
   Class;

2. An Order declaring that the actions of Defendant, as set forth above, violate the law in the
   respects alleged;

3. For judgment against Defendant for all economic, monetary, actual, consequential
   compensatory, and treble damages caused by its conduct;

4. For pre-judgment and post-judgment interest;

5. For declaratory judgment and injunctive relief consistent with the foregoing;

6. For reasonable attorneys' fees pursuant to C.C.P. §1021.5;

7. For punitive and exemplary damages;

8. For costs incurred in bringing suit;

9. For such other and further relief as the Court may properly and justly award.

Respectfully Submitted,

Dated: August 5, 2020          **JENSEN & ASSOCIATES**
                                *Trial Lawyers*

                                PAUL ROLF JENSEN
                                Attorneys for Plaintiffs

---

**FIRST AMENDED CLASS ACTION COMPLAINT**
– Page 21--

## DEMAND FOR JURY TRIAL

Based on the foregoing, Plaintiff, on behalf of himself, and all others similarly situated, hereby demand a jury trial for all claims so triable.

Respectfully Submitted,

Dated: August 5, 2020

**JENSEN & ASSOCIATES**
*Trial Lawyers*

PAUL ROLF JENSEN
Attorneys for Plaintiffs

**FIRST AMENDED CLASS ACTION COMPLAINT**
– Page 22--